**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOHEILA C.,[1] | Case No.:  3:24-cv-02227-BTM-BJW |
|     Plaintiff, | |
| v. | **ORDER VACATING THE DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS AND REMANDING FOR A NEW HEARING** |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | **[ECF NO. 1]** |

Pending before the Court is the Plaintiff's request for judicial review of the Commissioner's denial of her disability benefits.  For the reasons discussed below, the Court VACATES the Commissioner's decision and REMANDS for a new hearing.

## I.  BACKGROUND

### A.  Procedural History

On October 29, 2021, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act.  (Administrative Record ("AR"), at 95.) She alleged that major depressive disorder, anxiety, post-traumatic stress disorder, and

---

[1] Orders in Social Security cases adjudicated in the Southern District of California "refer to any non-government parties by using only their first name and last initial."  CivLR 7.1(e)(6)(b).

24-cv-2227

insomnia had impaired her ability to work since February 19, 2021.  (AR, 216, 223.)  The claim was denied initially by the Social Security Administration on March 29, 2022, and denied after reconsideration on August 23, 2022.  (AR, 119–23, 126–31.)  On October 21, 2022, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On June 8, 2023, the Plaintiff's claim was heard by ALJ Andrew Verne.  (AR, 58–79.)  The Plaintiff was represented by counsel.  (AR, 60.)  Both the Plaintiff and a vocational expert testified.  (AR, 63–74, 74–77.)  On July 21, 2023, the ALJ issued a written decision denying the Plaintiff disability benefits (AR, 19–34.)  The Plaintiff filed a request for review with the Appeals Council, which was denied on February 26, 2024.  (AR, 5–9.)  The ALJ's decision then became the final decision of the Commissioner of Social Security.  *See* 20 C.F.R. § 404.900(a)(4)–(5) (2025).  The Plaintiff filed this action to seek judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)

**B.     ALJ's Findings and Conclusions**

The ALJ first found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026.  (AR, 24.)  The ALJ then conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (2025).[2]

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged date her disabilities began.  (AR, 24.)  At step two, the ALJ found

---

[2] An ALJ conducts the five-step evaluation to determine whether an individual is disabled pursuant to the Social Security Act and therefore eligible for benefits.

At the first step, a claimant doing substantial gainful work activity is not disabled. At the second step, a claimant is not disabled unless she has a medically determinable physical or mental impairment or combination of impairments that is severe and either lasts at least a year or can be expected to result in death. At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner of Social Security. At the fourth step, a claimant is not disabled if her residual functional capacity allows her to perform her past relevant work. At the fifth step, a claimant is disabled if, given her residual functional capacity, age, education, and work experience, she cannot make an adjustment to other work that exists in significant numbers in the national economy.

*Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (citation modified); *see* 20 C.F.R. § 404.1520 (2025).  "This process ends when the ALJ can make a finding that the claimant is or is not disabled." *Woods*, 32 F.4th at 787 n.1.

24-cv-2227

that the Plaintiff had the "severe impairments" of post-traumatic stress disorder, major depressive disorder, general anxiety disorder, and insomnia. (*Id.*)  At step three, the ALJ found that the Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2025).  (*Id.* at 24–25.)  Next, the ALJ determined that the Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours; no interaction with the general public, and to occasional work-related, nonpersonal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; cannot perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); in a low-stress environment where there are few work place changes (i.e., the claimant would not have to switch from task to task) and the claimant has minimal decision-making capability (i.e., he would be unable to exercise substantial discretion in carrying out work activities).

(*Id.* at 26 (emphasis omitted).)

At step four, the ALJ determined that the Plaintiff was unable to perform any past relevant work. (*Id.* at 28.)  At step five, the ALJ found that other work existed in significant numbers in the national economy that the Plaintiff could perform.  (*Id.* at 29.)  The vocational expert testified that an individual with the Plaintiff's age, education, work experience, and RFC could hold the position of Industrial Cleaner (Dictionary of Occupational Titles ("DOT") No. 381.687-018), with 16,312 jobs nationally; Laundry Worker (DOT No. 361.685-018), with 3,938 jobs nationally; and Cleaner II (DOT No. 919.687-014), with 51,546 jobs nationally.  Relying on the vocational expert's testimony, the ALJ concluded that the Plaintiff was not disabled as defined in the Social Security Act and denied her disability benefits claim.

24-cv-2227

## II.   STANDARD

"The Commissioner's denial of disability benefits may be set aside only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record.  If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  The court must weigh all the evidence whether it supports or detracts from the Commissioner's decision.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  "[T]he court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## III.   DISCUSSION

The Plaintiff argues the Commissioner's decision should be reversed and remanded for further proceedings based on two issues.  First, that the ALJ failed to offer clear and convincing reasons for discounting the Plaintiff's subjective symptom testimony.  (ECF No. 13 ("Pl. Br."), at 7–11.)  Second, that the ALJ improperly developed the record.  (*Id.* at 11–12.)  The Court finds that Plaintiff's first argument has merit and warrants vacating the ALJ's decision and remanding this case for a new hearing.

### A.   Discounting the Subjective Symptom Testimony

The Ninth Circuit requires that ALJs engage in a two-step analysis to determine "the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

An ALJ begins by determining "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to

24-cv-2227

produce the pain or other symptoms alleged." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014))  A claimant is not required to show that her impairment could "reasonably be expected to cause the severity" of her alleged symptom.  *Id.*  Rather, a claimant need only show that her impairment could "reasonably have caused *some* degree of the symptom."  *Id.* (emphasis added)  A claimant is also not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id.*

If the ALJ finds that the claimant satisfied the first step and is not malingering, the ALJ must decide whether to accept or reject the claimant's testimony about the severity of her symptoms.  But the ALJ may reject the claimant's testimony "only by providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  To meet that burden, an ALJ may compare the claimant's subjective testimony against the objective medical evidence in the record.  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).  If the two are inconsistent, the ALJ "may indeed weigh [the evidence] as undercutting such testimony."  *Id.*  An ALJ must then "specifically identify the testimony from a claimant she or he finds not to be credible and explain" in their decision "what evidence undermines that testimony."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation modified).  At bottom, the specific, clear, and convincing test "requires an ALJ to show his work."  *Smartt*, 53 F.4th at 499.

The parties do not contest whether the Plaintiff satisfied the first step or was malingering.  Thus, we review only "the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).  "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citing *Lingenfelter*

24-cv-2227

*v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).

### i.     Inference of Improvement

The Plaintiff first argues that the ALJ improperly credited evidence that she improved with treatment to discount her subjective symptom testimony.    The Commissioner argues that evidence of effective treatment is a valid reason to discount the Plaintiff's subjective symptoms.[3]  (ECF No. 15 ("Resp. Br."), at 5–6.)

Symptoms may fluctuate during the progression of a mental disorder. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  Evidence that medical treatment is relieving a claimant's symptoms "can undermine a claim of disability."  *Id.*  But it is error for an ALJ to "improperly single[] out a few periods of temporary well-being from a sustained period of impairment" and rely on those periods to discredit testimony.  *Garrison*, 759 F.3d at 1018.  Although ALJs must rely on examples to explain a decision to discount testimony, "the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard."  *Id.*

The Court begins by reviewing the ALJ's recitation of the objective evidence and subjective testimony.  The ALJ began in March 2021, when the Plaintiff reported her stress, anxiety, and trauma.  (AR, 27 (citing AR, 589).)  The ALJ stated that she was diagnosed with major depressive disorder and post-traumatic stress disorder.  (*Id.* (citing AR, 578))  Then on July 1, 2022, the Plaintiff reported continued anxiety, difficulty with social interaction, loud and rapid speech, and mildly impaired judgment.  (*Id.* (citing AR, 798–99, 801))  The psychiatry office in the record noted the Plaintiff's "fair response so far" to her psychiatric medications.  (AR, 800; *see* AR, 27.)  On August 30, 2022, the same office noted that the Plaintiff reported she was "doing really good, feeling good, motivated, owning her behavior, and not snapping which she attributed to medication change and

---

[3] The Commissioner argues in a footnote that the Ninth Circuit's "clear and convincing" reasons standard "conflicts with the substantial evidence standard in 42 U.S.C. § 405(g)." (Resp. Br., 4 n.3.)  The Court finds that this argument is waived and declines to address it.  *See Est. of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").

24-cv-2227

attending [therapy]." (AR, 1277; *see* AR, 27.)  On November 2, 2022, the office noted that the Plaintiff was "going to be traveling through [D]ecember and wants to obtain both medications to last her till end of December." (AR, 1273; *see* AR, 27.)  The ALJ concluded the objective recitation by stating that on April 3, 2023, the Plaintiff requested a referral to a psychiatrist and was back on her medications.  (AR, 27 (citing AR, 1359).)  For the subjective testimony, the ALJ stated that the Plaintiff

> reported no motivation to clean, dress, get out of bed, or cook (8E). In her adult function report, the claimant reported difficulty facing people in a work environment (3E). The claimant reported difficulty with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. The claimant testified that to [sic] anxiety, cannot sleep, difficulty with concentration, social interaction, and motivation.

(*Id.* (citing AR, 274–79, 225–36))   The ALJ then stated that the record "indicates improvement with mental health treatment, therapy, and medication, inconsistent with Claimant's further alleged limitations (3F/18, 4F/7, 11)." (*Id.* (citing AR, 800, 1273, 1277))  The ALJ's three citations for this finding reference the three 2022 reports when the Plaintiff had a fair response to medication, began feeling better, and made travel plans.

This objective evidence does not in fact demonstrate that the Plaintiff's mental health was improving.  On the same day that the Plaintiff had a fair response to her medication, she had high test scores for depression and anxiety.  (AR, 799.)  She also reported that she felt "[u]ncontrollable anger" and "out of control."  (*Id.*)  The November 2022 evidence merely records that the Plaintiff wanted medication before traveling.  Only the record from August 30, 2022—where the Plaintiff said she was feeling better and attributed her changed condition to medication and therapy—appears to constitute evidence of improvement.  Yet this inference of improvement is undercut by evidence the ALJ omitted from his decision. On October 21, 2022, the Plaintiff requested an appointment because "she has been declining over the last 2 months." (AR, 1274.)

Even assuming that the Plaintiff's mental health had improved, the ALJ failed to articulate specific, clear, and convincing reasons to demonstrate this inference.  The

7

24-cv-2227

decision recites the objective evidence, summarizes the subjective testimony, and finds that the Plaintiff's improvement is "inconsistent with [her] further alleged limitations." (AR, 27.)   Nowhere did the ALJ "identif[y] *which* testimony []he found not credible" and "explain[] *which* evidence contradicted that testimony." *Brown-Hunter*, 806 F.3d at 494. The Ninth Circuit does not require that an ALJ perform a "line-by-line exegesis" of the subjective testimony. *Lambert*, 980 F.3d at 1277.  Nonetheless, an ALJ must do more than recite parts of the record and conclude that an inconsistency exists.  *Cf. Burrell*, 775 F.3d at 1138 ("Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors— and comb the administrative record to find specific conflicts.").  Here, the ALJ did not "show his work" when discounting the Plaintiff's subjective symptom testimony.

The Commissioner has identified specific parts in the record to demonstrate to this Court that the Plaintiff's condition was in fact improving. (Resp. Br., 4–6; *see, e.g.*, *id.* at 4 ("Plaintiff alleged problems in almost all areas of mental functioning, but testing showed she had logical and coherent thought process, good insight, and normal thought content.").) These efforts "to shore up the ALJ's decision, while understandable, are unavailing." *Lambert*, 980 F.3d at 1278.  The Court is "constrained to review the reasons the ALJ asserts."  *Id.* (quoting *Brown-Hunter*, 806 F.3d at 494)  The Commissioner presents only one point that was expressly mentioned by the ALJ: that the Plaintiff's "[m]ental status examination was within normal limits" on March 17, 2021. (Resp. Br., 4; AR, 27.)  Yet as discussed above, the ALJ did not adequately articulate that this constituted an example of a "broader development" that could satisfy the specific, clear, and convincing test. *Garrison*, 759 F.3d at 1018.  The Court finds that the ALJ erred because he didn't provide specific, clear, and convincing reasons to support the conclusion that the Plaintiff's improvement undercut her subjective symptom testimony.

### ii.    Lay Expertise

The Plaintiff also contends that the ALJ improperly relied on his own lay expertise to interpret the record and discount her subjective symptom testimony.  She claims the

24-cv-2227

record lacks "any opinions from treating physicians or consultative examiners." (Pl. Br., 10.)  Thus, the ALJ's rejection of the Plaintiff's claim must have been based "on his own interpretation of the record." (*Id.*)  She claims this was error.

The Court disagrees.  Counsel for the Plaintiff stated during the hearing that the record included a treating physician's opinion.  (AR, 73–74 ("ALJ: To, Counsel, sir, are there any opinions generated by her treating doctors in the file? . . . Atty: Okay, yes, that's [AR, 509], where they . . . concurred [the Plaintiff] wasn't able to return to work at that point . . . .").  Regardless, the Ninth Circuit does not bar ALJs from "independently reviewing and forming conclusions about medical evidence" when resolving a claimant's disability claim.  *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).  The Court finds no error in the ALJ doing so here.

### iii.   Harmless Error

The Plaintiff argues that the ALJ's error in discounting the subjective symptom testimony was not harmless.  She claims that the RFC did not "include a true limitation to her ability to maintain attention and concentration for extended periods," which affected the vocational expert's testimony on the jobs available to a claimant in the Plaintiff's position. (*See* Pl. Br., 11.)  Thus, the ALJ's error resulted in a different outcome for her.

"Even when the ALJ commits legal error, [the reviewing court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  An error is harmless when "'the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" or when the error is "inconsequential to the ultimate nondisability determination." *Id.* (first quoting *Alaska Dep't of Env't. Conservation. v. EPA*, 540 U.S. 461, 497 (2004); and then quoting *Molina*, 674 F.3d at 1115)

Here, the ALJ's error in not adequately explaining his decision to discount the subjective testimony harmed the Plaintiff's disability claim.  As a preliminary matter, the Commissioner has forfeited this issue by declining to address it in the responding brief. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make

24-cv-2227

the timely assertion of a right . . . ."). Notwithstanding forfeiture, the Court finds that the error was not harmless on the merits. As discussed above, the ALJ's rationale was not "reasonably . . . discerned." Also, during the hearing before the ALJ, the vocational expert testified that if a claimant was "off task 15 percent or more during the workday on a consistent basis" or would be "absent twice per month on a consistent basis," no work would be available. (AR, 77.) The record demonstrates that a change in the RFC would change the jobs available to a claimant. The Court therefore finds that the improper evaluation of the RFC was consequential to the Plaintiff's nondisability determination. The ALJ's decision must be vacated and the matter remanded for a new hearing.

## B.    Developing the Record

The Plaintiff's second argument is that the ALJ failed to properly develop the record. Similar to the first issue, the Plaintiff contends that the record lacks treating and examining opinions, which made the ALJ improperly rely on his own lay interpretation of the record. The Plaintiff also challenges the record's completeness by stating that "[i]t is not clear why none of the short term disability letters provided to [the Plaintiff's] employer were included." (Pl. Br., 11–12.) Lastly, she questions "why no consultative examination was performed." (*Id.* at 12.)

Each argument fails. First, as discussed above, the record contains a treating opinion and the ALJ did not appear to err by independently reviewing the record. Second, the record before the ALJ contained the disability letters. (AR, 33 ("List of Exhibits: Medical Records").) Counsel for the Plaintiff also stated during the hearing that the record was complete. (AR, 62 (Atty: "Yes, we're complete.").) After the ALJ recited the list of exhibits, including sections "1F through 6F" that contained the disability letters, counsel again said "Yes, that's it." (*Id.*)

Third, the Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). Although ALJs have a duty to develop the record, which may include ordering a consultative examination, that

24-cv-2227

duty is triggered "only when there is ambiguous evidence or when the record is inadequate." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). The Plaintiff presents no argument on these triggering conditions aside from the same contention that the record lacked a treating opinion. The Court remains unpersuaded.

On remand, an ALJ will review the record to determine the Plaintiff's disability status. Should the ALJ find that the record is inadequate or contains ambiguous evidence, they may order a consultative examination. *See* 20 C.F.R. § 404.1519a (2025). The Plaintiff may also arrange for a medical examination at her own expense unless the Commissioner provides advance approval of payment. *See id.* § 404.1517 (2025).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED**. This matter is **REMANDED** for a new hearing consistent with this opinion.

**IT IS SO ORDERED.**

Dated: April 24, 2026

Honorable Barry Ted Moskowitz
United States District Judge

24-cv-2227